UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATHERINE A. CURETON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 16-1270 (RJL) |
| ) | |
| ELAINE DUKE[1] *et al.*, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION
September 29, 2017 [Dkt. ##19, 21]

Plaintiff, appearing *pro se*, sues the Elaine Duke ("Duke"), the Acting Secretary of Homeland Security; the U.S. Department of Homeland Security ("DHS"); and several other officials, claiming that she was retaliated against for participating in EEO activity. *See* Am. Compl. at 3 [Dkt. # 17].[2] Pending in this case is defendants' Motion to Dismiss (under Rule 12(b)(6) of the Federal Rules of Civil Procedure), or for Summary Judgment (under Rule 56). Defendants contend that the claims in plaintiff's original complaint are untimely and the claims in the amended complaint are unexhausted. In addition, defendants assert that all but the Secretary of DHS should be dismissed as defendants. Plaintiff has filed an opposition in which she moves for a default judgment. Because the record shows that defendants have not defaulted, *see* Fed. R. Civ. P. 55(a), plaintiff's

---

[1] By substitution pursuant to Fed. R. Civ. P. 25(d).

[2] All page citations are the numbers assigned by the electronic case filing system.

1

motion is denied and, for the reasons explained below, defendants' motion is **GRANTED**.

## BACKGROUND

Plaintiff's claims are interspersed among her original complaint, amended complaint, and supplemental opposition [Dkt. # 23].[3] In the original complaint, plaintiff lists her basis of jurisdiction as the Age Discrimination in Employment Act ("ADEA"). Compl. at 4. But the gravamen of this action is plaintiff's belief that "she has been subjected to intentional discrimination and treated unfairly by DHS since filing an ADEA . . . claim [on] September 16, 2013." Supp. Opp'n at 1. The most recent acts of reprisal are alleged to have occurred in February 2016, when plaintiff was rejected for a vacant position in the Office of Chief Financial Officer ("OCFO"), and in May 2016, when plaintiff was rejected for a position at U.S. Immigration and Customs Enforcement ("ICE"). Am. Compl. at 4.

### A. Plaintiff's Employment History and 2013 EEO Activity

In October 2012, DHS hired plaintiff at age 41 as a Grade 9 Student Trainee under its Pathways Program. The appointment was not to exceed one year, and it did not "offer any promotion potential." Defs.' Stmt. of Facts ¶ 14 [Dkt. # 19-1]. As discussed below, plaintiff's appointment ended in January 2014.

The following history is taken from the undisputed facts set out by the Administrative Judge in the EEOC's February 1, 2016 Decision. *See* Defs.' Ex. A [Dkt.

---

[3] *See Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999) (in construing *pro se* filings liberally, courts, as a general rule, should "read[] all of the plaintiff's filings together").

2

# 19-2]. Plaintiff was assigned to the OCFO, where she was supervised by Rhonda Brooks ("Brooks"), Director of Administration and Logistics. In June 2013, plaintiff sent an email to the manager of the Pathways Program, Jemilda Williams, requesting a change in her job classification and grade. In September 2013, plaintiff contacted an EEO counselor, complaining that the Pathways Program "is not adhered to and discriminates against her"; that the pay grades for Pathways interns failed to consider participants over 40; that younger Pathways interns "and a few permanent employees hired for the A&L division under Rhonda Brooks' supervision earn[ed] equivalent to or more than [plaintiff]"; and that "she was given a job series of Program Specialist when her job function is Program/Project Manager of OCFO Records Management Program." Dec. at 7-8. In September 2013, Williams sent an email to all Pathways interns, requesting that they complete the Pathways Intern Program Participant Agreement; plaintiff's agreement extended her internship to October 21, 2014. In response, plaintiff notified Williams and Brooks that "she did not 'plan to continue with her Pathways Appointment after January 17, 2014 or when the DHS Acquisition Institute processes [her] APM Level I Certification application.'" Dec. at 8.

Plaintiff filed her formal EEO complaint on September 30, 2013. In a meeting with Brooks on October 18, 2013, plaintiff confirmed her intention to vacate her position on January 10, 2014, because she was planning to relocate to California. On October 29, 2013, Brooks assigned plaintiff as an administrative assistant to Morgan Geiger, Director of Program Analysis and Evaluation. Twelve days later, on November 13, 2013, plaintiff amended her EEO complaint, alleging that "she was discriminated against because of

harassment while working under Geiger's supervision," and Brooks removed plaintiff from Geiger's supervision. Dec. at 9.

On November 20, 2013, plaintiff informed Brooks that she intended to complete the Pathways internship through the extended deadline of October 21, 2014, but "at a different DHS component or agency." *Id.* Plaintiff further informed Brooks that "[u]ntil that appointment is secured," she "intend[ed] to file for unemployment insurance." *Id.* The next day, on November 21, 2013, plaintiff amended her EEO complaint, alleging a "hostile work environment relating to events that occurred between November 13, 2013, and November 20, 2013." *Id.* On December 18, 2013, Brooks informed plaintiff that "her appointment would expire on January 11, 2014 and that no extension would be approved beyond that date"; a corresponding Personnel Action showed plaintiff's appointment ending on that date as well. *Id.* On January 13, 2014, plaintiff amended her EEO complaint, alleging wrongful termination; she amended the complaint three more times, on April 22, 2014, May 7, 2014, and June 17, 2014. *See* Dec. at 9-10.

The Administrative Judge identified three claims in Cureton's complaint, all of which were resolved in DHS's favor. Claim one alleged age discrimination based on management's refusal in August 2013 to "adjust [plaintiff's] position to the appropriate job series, title, and pay grade in order to reflect her qualifications and job assignment," and pay disparities favoring younger workers with less education and experience. Def.'s Stmt. of Material Facts ¶ 2 (quoting Feb. 1, 2016 Dec.). Claim two alleged a retaliatory hostile work environment based on three separate occurrences in November 2013. Claim three alleged reprisal based on the employment termination in January 2014, two separate

occurrences in April and June of 2014, and an undated instance where "the Office of the Chief Human Capital Officer failed to complete and forward the findings of a desk audit [plaintiff] requested in November 2013." *Id.*

On March 3, 2016, DHS issued a Final Order that included a Notice of Appeal Rights. Plaintiff was informed of several options. She could appeal to EEOC within 30 days from her receipt of the final decision or file a civil action within 90 days if she did not appeal to EEOC. If plaintiff appealed to EEOC, she could file a civil action within 90 days after receipt of EEOC's final decision on appeal or "after 180 days from the date of filing an appeal with EEOC if there has been no final decision by EEOC." Final Order at 7 [Dkt. # 19-3]. The Notice further informed plaintiff that if her claim was "based on age discrimination, the time limits . . . may not be applicable[.]" *Id.*

Plaintiff acknowledged receiving an email to which the Final Order was attached on March 15, 2016, but she did not appeal the decision to the EEOC. Rather, plaintiff lodged this civil action on June 15, 2016, two days beyond the 90th day of her receipt of the right-to-sue notice. Def.'s Stmt. of Material Facts ¶¶ 8-12.

## B. Plaintiff's 2016 EEO Activity

Meanwhile, in March 2016, plaintiff filed an EEO complaint, charging that DHS Headquarters failed to hire her in February 2016 for an advertised Management and Program Analyst position because of her prior EEO activity. *See* Apr. 12, 2016 Acceptance Letter, Def.'s Ex. K [Dkt. #19-12]. In the acceptance letter, DHS described the alleged discriminatory incident as follows: "On or around February 9, 2016, you were rated ineligible and not referred for consideration for [the position] advertised under

Vacancy Announcement Number DHSHQ16-1597502-FO." *Id.* at 2. DHS then informed plaintiff that an investigation would be conducted and completed within 180 days and that she had a right to request a hearing before an Administrative Judge or to file a lawsuit "after 180 days [had] elapsed[.]" *Id.* at 3.

In May 2016, plaintiff sought to amend the EEO complaint by adding a claim of reprisal arising from "a negative suitability determination" by ICE "for the Records Management Specialist position at ICE, Privacy and Records Office[.]" May 20, 2016 Denial of Amendment Letter, Def.'s Ex. L at 2 [Dkt. # 19-13]. DHS denied plaintiff's request upon determining that the amended claim was "not like or related to [the original] Complaint, as it involves a different agency, *i.e.* ICE, and could not have been reasonably expected to grow out of the investigation of the original claim against this agency." *Id.* The letter provided information about pursuing an EEO claim with ICE, including the name and address of the office to contact. *See id.* at 3. On reconsideration, DHS Headquarters affirmed the decision to deny the amendment as to ICE's suitability decision but permitted plaintiff to add a claim that the "Responsible Management Officials" in the original complaint had given her a "negative employment reference" for the ICE position. The appeal letter reiterated: "To the extent you allege that ICE's negative suitability determination in the course of your candidacy for the [advertised position] was retaliatory and/or discriminatory, kindly direct your allegations to ICE's EEO office, as stated in the May 20th Amendment Denial and repeated here, for your convenience[.]" Def.'s Ex. M at 5 [Dkt. # 19-14].

6

On June 1, 2016, DHS Headquarters issued an Amended Acceptance Letter, which informed plaintiff, among other things, that "an investigation of the accepted claim [Issues Nos. 1 and 2] will be conducted and completed within 180 days from the filing of the complaint." Plaintiff was told further that "any time after 180 days have elapsed . . ., you have the right to request a hearing before an AJ [or] to file a civil action[.]" Def.'s Ex. N [Dkt. # 19-15]. On June 3, 2016, DHS issued a revised Amended Acceptance Letter based on plaintiff's emails, setting out the added claim as follows:

> In or around March 2016, Rhonda Brooks and Chip Fulghum gave a negative employment reference in the course of your candidacy for the contractor position of Senior Records Manager/Project Manager at BarnAllen Technologies, Inc., for which there is no vacancy announcement number.

Def.'s Ex. O [Dkt. # 19-16].

As of October 26, 2016, ICE had no record of plaintiff's contacting ICE's Office of Diversity and Civil Rights, which "is responsible for receiving and processing EEO complaints filed by employees and applications of ICE." Decl. of Janet White [Dkt. # 19-17].

## LEGAL STANDARDS

### A. Motions to Dismiss

A Rule 12(b)(6) motion to dismiss challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations and internal quotations marks omitted). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "[T]he [C]ourt need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

In ruling on a Rule 12(b)(6) motion to dismiss, the Court may consider "any documents either attached to or incorporated in the complaint . . . without converting the motion to dismiss into one for summary judgment." *Baker v. Henderson*, 150 F. Supp. 2d 13, 15 (D.D.C. 2001) (citations omitted). This includes documents that are "referred to in the complaint and [] central to the plaintiff's claim'" even if they are produced, not by the plaintiff in the complaint, but by the defendant in a motion to dismiss. *Solomon v. Office of the Architect of the Capitol*, 539 F. Supp. 2d 347, 349-50 (D.D.C. 2008) (citing *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd* 38 Fed. App'x. 4 (D.C. Cir. 2002)) (internal citations omitted). In addition, the Court may consider "matters of which it may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## B. Motions for Summary Judgment

Summary judgment is proper when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it is capable of affecting the "outcome of a suit under governing law." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of identifying evidence that demonstrates that there is no genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Once the moving party has done so, the burden shifts to the nonmoving party—plaintiff in this instance—to identify and "properly support" the "specific facts" showing that there is a genuine issue for trial. *Id.* at 324 (internal quotation marks omitted); *Anderson*, 477 U.S. at 256. If the nonmoving party fails to proffer relevant evidence, the moving party may succeed on summary judgment by citing that "failure of proof." *Celotex Corp.*, 477 U.S. at 323.

When examining a summary judgment motion, a court must accept the nonmoving party's statements as true and view all evidence and inferences in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. Still, the nonmoving party must come forward with more than "a scintilla of evidence" in support of its position on a disputed issue. *Id.* at 252; *see also id.* at 249-50 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (citations omitted). To survive summary judgment, the nonmoving party may not simply rest upon "mere allegation or denials of his pleading," *id.* at 256, nor on "vague or conclusory" evidence. *Johnson v. Perez*, 823 F.3d 701, 710 (D.C. Cir. 2016).

## ANALYSIS

### A. Timeliness of Plaintiff's Claims

To the extent that the original complaint is not superseded by the amended complaint, the Court agrees that the filing of the original complaint on the 92nd day after plaintiff's receipt of DHS's final action renders the underlying claims, including the ADEA and related wrongful termination claims, untimely. Courts "generally apply the same approach" in ADEA and Title VII cases. *Wilson v. Cox*, 753 F.3d 244, 247 (D.C. Cir. 2014). "The filing time limit imposed by Title VII, 42 U.S.C. § 2000e–16(c), is not a jurisdictional requirement but rather is similar to a statute of limitations. *Colbert v. Potter*, 471 F.3d 158, 167 (D.C. Cir. 2006) (citations and internal quotation marks omitted). As a result, the defendant bears the burden of pleading and proving a statute of limitations defense, *id.* at 165, and the time requirements are subject to waiver, estoppel, and equitable tolling, albeit "sparingly," *id.* at 167.

The record establishes that plaintiff received the agency's Final Order and Notice of Appeal Rights on March 15, 2016, and it is undisputed that no appeal was filed with the EEOC. As defendants contend, then, plaintiff had until June 13, 2016, to file her lawsuit, which renders the initiation of this action on June 15, 2016, untimely. *See Colbert*, 471 F.3d at 167 (concluding that a plaintiff's "complaint, filed at least 92 days following receipt of the Final Decision, was untimely"). Plaintiff has offered no reason to consider equitable relief. Accordingly, defendants are granted summary judgment on the claims underlying the original complaint.

## B. Exhaustion of Administrative Remedies

Defendants have not sought to apply the statute of limitations to the amended complaint but rather seek its dismissal on the ground that plaintiff failed to exhaust her administrative remedies. It is well-established that federal employees must exhaust administrative remedies before bringing lawsuits in federal court under the ADEA, *see Gilbert v. Napolitano*, 958 F. Supp. 2d 9, 12 (D.D.C. 2013) (citing cases), for either a "retaliatory or discriminatory" act, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). *See* 29 U.S.C. §§ 633a(b)-(d); 29 C.F.R. § 1614.105(a)(1) (EEOC procedures for federal employees); *Niskey v. Kelly*, 859 F.3d 1, 3 (D.C. Cir. 2017) (holding district court's dismissal of both discrimination and retaliation claims proper "for failure to exhaust [ ] administrative remedies").

Under the ADEA, an employee may forego the administrative process by filing a notice of intent to sue with the EEOC within 180 days of the alleged unlawful practice, and waiting thirty days before commencing suit in a United States District Court. But if the employee chooses the administrative path, she must complete the administrative process, *Peyus v. Lahood*, 919 F. Supp. 2d 93, 99 (D.D.C. 2013), and the Court may dismiss any unexhausted claims. *See Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies).

"[A] federal employee who is a victim of retaliation due to the filing of a complaint of age discrimination may assert a claim under the federal-sector provision of the [ADEA]." *Gomez-Perez v. Potter*, 553 U.S. 474, 477 (2008). Therefore, to the

11

extent that plaintiff's ADEA claim survives, plaintiff does not claim, and the record does not show, that she filed an intent-to-sue notice with the EEOC, let alone one within 180 days of the alleged unlawful practice. Otherwise, plaintiff filed her amended complaint on October 17, 2016—well before 180 days had elapsed on the claims accepted by DHS on June 3, 2016. And "any civil action filed in a District Court before the 180-day period has elapsed is not authorized." *Santos v. Lynch*, No. 16-1039, 2016 WL 3951060, at *3 (D.D.C. July 20, 2016) (citing 29 C.F.R. § 1614.407(d)). Consequently, the claims comprising the amended complaint are dismissed without prejudice. *See id.* (noting that "the plain text of section 1614.407 and the case law applying it make clear that where a civil action has been filed before the relevant time period has elapsed, dismissal without prejudice is required").

## C. The Proper Defendant

The federal antidiscrimination statutes authorize lawsuits against the head of the department or agency being sued. *See Amariglio v. Nat'l R.R. Passenger Corp.*, 941 F. Supp. 173, 178 (D.D.C. 1996) (dismissing individual defendants "because the ADA, like Title VII and the ADEA, does not provide for liability against individuals") (citing *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995); *EEOC v. AIC Security Investigations*, 55 F.3d 1276, 1279-81 (7th Cir. 1995)). Therefore, the claims against the individual defendants are dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, plaintiff's Motion for Default Judgement is DENIED, and defendants' Motion to Dismiss or for Summary Judgment is GRANTED. Judgment

is entered for defendants on the untimely filed claims; the unexhausted reprisal claims are dismissed without prejudice. A separate Order consistent with this decision accompanies this Memorandum Opinion.

                                                                                         */s/*
                                                    RICHARD J. LEON
                                                    United States District Judge